IN THE MATTER OF WALTER J. GEORGE,
AN ATTORNEY-AT-LAW.

Argued June 6, 1967—Reargued November 6, 1968—
Decided December 2, 1968.

*Mr. Max M. Barr* argued the cause for the Monmouth County Ethics Committee in support of the order.

*Mr. Walter J. George* argued the cause for respondent, *pro se*.

The opinion of the court was delivered

PER CURIAM. This disciplinary matter arose out of respondent's representation of a seller in a real estate transaction. The seller complained that respondent failed to account for and to pay over all of the money to which she was entitled.

The facts established by the evidence before the Committee may be briefly summarized. At the time of the title closing

on April 30, 1963, respondent was holding the buyer's deposit in the amount of $1,350. The buyer's title examination disclosed an old federal tax lien against the premises in the principal amount of $571.18. By arrangement of the parties, the buyer's attorney held $1,100 of the purchase price in escrow to satisfy the lien. At the closing, respondent also withheld $571.18 from the $1,350 deposit and, after deducting his fee, he turned over the balance of the deposit to his client. The tax lien release, issued by the U. S. Treasury Department, was received by the buyer's attorney from respondent and recorded a few weeks later. None of the escrow funds which had been held by the buyer's attorney were used to satisfy the lien. After receipt of the release, the buyer's attorney remitted to respondent $1,053.30, representing the escrow monies less agreed expenses of $46.70. This sum, which clearly belonged to the client, was deposited by respondent in his trust account.

Respondent made no payment to his client with respect to these retained sums of $571.18 and $1,053.30 until more than two years later, despite her frequent inquiries. In September 1963, he told her that the federal tax lien matter was not yet completed, an obvious misstatement since he knew that the lien had been released months before. Finally in August 1965, he sent her a check for $415 drawn on his trust account. He also promised an accounting shortly, which was not forthcoming. The check was returned twice for insufficient funds and was finally made good by telegraphic money order a month or so later. This complaint was filed soon after. Prior to the hearing before the Committee, respondent sent his client another check with respect to the $1,053.30 received from the buyer's attorney. This still left $571.18 unaccounted for, the amount respondent had retained at closing ostensibly to satisfy the tax lien.

At the hearing respondent for the first time set forth an accounting and claimed that he must have sent the $571.18 to the Treasury Department to obtain the release

of the lien, although he could produce no bank or other record in substantiation. He asserted that some of his office records had been lost.

On the basis of this state of the proof, the Committee in its presentment found respondent guilty of unethical conduct in failing to render a prompt accounting to his client, in using trust funds for other purposes (based on the bad trust account check for $415 given in August 1965), and in misrepresenting to his client that the tax lien matter was not completed when he well knew the contrary to be the fact. The Committee made no specific finding with reference to the retention of the $571.18, merely stating that respondent might still be withholding it since he could produce no proof of its disbursement in satisfaction of the lien. The matter came on before us in this posture at the first argument. We thereupon directed that further investigation be made with respect to payment for the tax lien release.

The investigation required some time and most of the burden fell upon the Committee. Proof was finally obtained from the Internal Revenue Service that the lien was satisfied long prior to the title closing through payments by and credits to the taxpayer involved, and that no consideration was required or received for the release. Thus it was definitely established that respondent had never disbursed the $571.18 he had withheld from the deposit monies. After this proof was made known to him, he remitted that sum to his client, or rather to her estate, since she had died in the interim. This was the state of affairs at the time of the reargument.

We agree with the Committee that unethical conduct by respondent in the respects mentioned in the presentment is clearly demonstrated. We are also satisfied that respondent knew he had not paid the tax lien out of the monies he had withheld and that he had converted the $471.18. While restitution was finally made, we are of the opinion that respondent's improper conduct in the entire matter is of such

gravity that he should be suspended from the practice of law for one year and until the further order of the court.

So ordered.

*For 1-year suspension*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.